DECISION
{¶ 1} Relator, Lester C. Green, filed an original action requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation, and to issue an order granting said compensation.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ. R. 56(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's requested writ of mandamus. (Attached as Appendix A.)
 {¶ 3} Relator has filed objections to the magistrate's decision, contending that the commission abused its discretion in failing to discuss whether relator has any transferable skills, and in failing to discuss relator's ability to develop such skills given his limited education.
 {¶ 4} In his decision, the magistrate agreed with realtor's contention that the commission's order failed to specifically address transferability of skills, but the magistrate further concluded that such failure did not detract from the reasoning of the non-medical analysis. More specifically, the magistrate noted that the commission did address the relevancy of relator's previous work skills pursuant to Ohio Adm. Code 4121-3-34(B)(3)(c)(v), and found relator was capable of sustained remunerative employment notwithstanding the lack of transferability of skills. Upon review, we agree with the magistrate's determination that the commission's denial of PTD compensation was not based upon a finding of transferability of skills, and thus the commission's failure to identify transferable work skills was not an abuse of discretion. As noted by the magistrate, the commission's order addresses relator's work history in finding that he was capable of sustained remunerative employment, and a claimant's lack of transferable skills does not mandate a PTD compensation award. State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139,142.
 {¶ 5} Relator further contends that if he does lack transferable skills, the evidence fails to support a determination that he can be retrained for any other occupation given his limited education. Relator points to the vocational reports of Robert Mangiarelli and Carl Hartung as evidence that he is not capable of retraining.
 {¶ 6} In reviewing relator's past work history, the commission found that relator successfully handled semi-skilled jobs that would ordinarily challenge a person with a limited educational background. The magistrate noted that the commission was drawing a correlation between the educational factor and the work history, and that the commission's analysis of relator's work history caused it to view relator's basic educational abilities in a more favorable manner. Here, we find no abuse of discretion by the commission in determining that relator's past work history reflected an ability to learn on-the-job duties and to handle certain entry-level, light duty positions. Further, to the extent that the commission did not rely upon the vocational reports of Mangiarelli or Hartung, it is well-settled that the commission "may reject the conclusion of a rehabilitation report and draw its own conclusion from the same nonmedical information." Ewart, supra, at 141. See, also, State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, 271
(commission is the expert on vocational evidence, and had authority to reject vocational expert's report).
 {¶ 7} Based upon an examination of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own, including the finding of facts and conclusions of law contained in it. Relator's objections to the magistrate's decision are overruled, and the requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
McCORMAC, J., and PETREE, P.J., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C)
 IN MANDAMUS {¶ 8} In this original action, relator, Lester C. Green, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 9} 1. On July 23, 1984, relator sustained an industrial injury while employed with respondent York International Corporation ("York"), a self-insured employer under Ohio's Workers' Compensation laws. The claim is allowed for: "acute traumatic cervical strain; acute traumatic thoracic strain and sprain; acute traumatic lumbosacral strain and sprain complicated by sacroiliac L5, T12, T9 and atlas subluxations causing nerve root pressure at area of subluxation; herniated left L5-S1 disc; degenerative disc disease L5-S1," and is assigned claim number 863328-22.
 {¶ 10} 2. In 1996, relator filed a claim for a left shoulder injury. Although the commission disallowed the claim in December 1999, relator was able to obtain a settlement of the claim with York. In 1999, the year relator quit work at York, he applied for and received long term disability benefits through York for the left shoulder injury.
 {¶ 11} 3. On August 13, 2001, relator filed an application for PTD compensation. In support, relator submitted a report dated April 13, 2001 from Josephine H. Brown, D.O., who opined that relator "is unable to perform any substantial remunerative employment and he is permanently and totally disabled."
 {¶ 12} 4. Under the education section of the PTD application, relator stated that the tenth grade was the highest grade of school he had completed and this occurred in the year 1962. He did not obtain a certificate for passing the GED test. He did not attend a trade or vocational school. The application form posed three questions to the applicant: (1) "Can you read?"; (2) "Can you write?"; and (3) "Can you do basic math?" Given a choice of "yes," "no," and "not well," relator selected "not well" for all three queries.
 {¶ 13} 5. The PTD application form also asks the applicant to give information about his work history. Relator stated that he was employed as a "warehouse/shipping laborer" from January 12, 1970 to February 19, 1999. He described the basic duties of this job:
 {¶ 14} "* * * Loading AC/Heating units and parts onto semi-trucks via tow-motor or by hand. Sometimes I drove box-truck from each warehouse as needed also packed A/C Heating parts into boxes to be shipped."
 {¶ 15} Relator described the machines, tools and equipment used: "Driving tow-motor — usually backwards looking over shoulder due to large load. Driving box truck as needed."
 {¶ 16} Relator further indicated that he had to read "load sheets" so that he "knew what part/units went on which truck."
 {¶ 17} 6. In further support of his PTD application, relator submitted a vocational report dated July 17, 2001 from Shannon Cook and Robert Mangiarelli. The Cook/Mangiarelli report provides the following testing results:
 {¶ 18} "SRA Reading Index: 8th Percentile, Un-Skilled Worker Norms.
 {¶ 19} "SRA Arithmetic Index: 8th Percentile, Unskilled Worker Norms.
 {¶ 20} "Minnesota Clerical Test: 1st Percentile, all Available Norms."
 {¶ 21} The Cook/Mangiarelli report concludes that "Mr. Green will not be capable of engaging in sustained remunerative/gainful employment at this time."
 {¶ 22} 7. On November 30, 2001, relator was examined by Stephen L. Demeter, M.D. Dr. Demeter rated impairment for the allowed conditions at ten percent whole person. He further opined that relator is medically able to perform "light work."
 {¶ 23} 8. The commission requested an Employability Assessment Report from Carl W. Hartung, a vocational expert. The Hartung report, dated January 21, 2002, responds to the following query:
 {¶ 24} "Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which a[r]ise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or, (B) following appropriate academic remediation or brief skills training."
 {¶ 25} Indicating acceptance of Dr. Demeter's reports and responding to the above query, Hartung listed the employment options as follows:
 {¶ 26} "1A.) Usher, Ticket Taker, Service Station Attendant, Marking Clerk, Hand Packer and Packager, Janitors Cleaner.
 {¶ 27} "1B.) Order Clerk, Guard — Watch Guard, Mail Clerk, Cashier."
 {¶ 28} Under part three "Effects of Other Employability Factors," Hartung wrote:
 {¶ 29} "The testing completed at Hillside Rehabilitation Hospital by Shannon C. Cook, MRC, CRC and Robert Mangiarelli, M.Ed., C.V.E. in reading and arithmetic are consistent with the GED Levels stated in the Classification of Jobs Book that is used in conjunction with the Dictionary of Occupational Titles. I also, have no disagreement with the conclusions stated in the report."
 {¶ 30} Hartung describes the "Work History" as follows:
 {¶ 31} "Job Title * * * Skill Level Strength Level Dates
 {¶ 32} "Material Handler * * * Semi-skilled Heavy 1/70-2/99
 {¶ 33} "Industrial Truck * * * Semi-skilled Medium Same
 {¶ 34} Operator
 {¶ 35} "Truck-Driver — Light * * * Semi-skilled Medium Same"
 {¶ 36} 9. Following a March 18, 2002 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The order states:
 {¶ 37} "The claimant has requested that claim number 96-412604 not be included for consideration of this application as said claim has been settled in full. This claim is against the same employer and the employer's attorney agreed that this claim is settled. The Staff Hearing Officer notes that this claim involves the left shoulder. As such, the Staff Hearing Officer will not consider claim number 96-412604 for permanent total disability benefits; however, a portion of the history of this claim will be discussed as it overlaps the events of the claim at issue.
 {¶ 38} "Claim number 863328-22 occurred when the claimant was on a ladder, attempted to pull an 80 pound motor from a shelf, and the ladder fell causing the claimant to strike his back on a steel rack.
 {¶ 39} "Conservative medical treatment was rendered. It is noted that no surgery has ever been performed. The claimant was last paid temporary total compensation in this claim in 1993. Although the employer has not paid for medical treatment since 1993, the claimant testified that he has received sporadic treatment for his back since that time.
 {¶ 40} "The claimant returned to his former position of employment as a tow motor driver in 1993. In 1996, the claimant sustained a left shoulder injury. The claimant continued to work until 1999 when he applied for and received long-term disability benefits solely for his shoulder problems.
 {¶ 41} "The claimant has not looked for any work since 1999 and is now on Social Security Disability.
 {¶ 42} "* * *
 {¶ 43} "The claimant was examined by Dr. Stephen Demeter, M.D., on 11/30/2001. Dr. Demeter found that the claimant had reached maximum medical improvement. He also opined that the claimant, based upon the allowed conditions of this claim, would be able to perform light work.
 {¶ 44} "The claimant's work history consists of duties as a truck driver and industrial truck operator, both of which are semi-skilled jobs and are classified as medium-level regarding strength level. His last position was that of a material handler, which is also a semi-skilled position but is considered a "heavy" job. Per Dr. Demeter the claimant is unable to do any of his former jobs.
 {¶ 45} "The claimant has indicated that he cannot read, write, nor do math well. This, at first glance, would corrolate with his tenth grade education which, ordinarily limits reasoning, and arithmetic and language skills but not enough to allow a person to do many of the complex duties needed in semi-skilled positions. However, the claimant's past work history reflects an ability to perform work over and above what his limited education would allow.
 {¶ 46} "Based upon the allowed conditions of this claim and the physical abilities and restrictions found by Dr. Demeter coupled with the claimant's limited education and his age of 57, the Staff Hearing Officer finds that the claimant would be able to engage in light duty work which would allow him to secure a position such as a security guard or even light assembly work where he could sit most of the time.
 {¶ 47} "As such, this Staff Hearing Officer finds that claimant's disability is not total and that the claimant is capable of engaging in sustained remunerative employment, or learning on-the-job duties."
 {¶ 48} 10. On April 8, 2002, relator, Lester C. Green, filed this mandamus action.
Conclusions of Law:
 {¶ 49} The issue is whether the commission's nonmedical analysis violates State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, because the commission allegedly failed to comply with its own rules regarding the adjudication of PTD compensation.
 {¶ 50} The magistrate finds that the commission's nonmedical analysis does not violate Noll, and does not contravene its own rules regarding adjudication of PTD compensation. Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 51} For its threshold medical determination, the commission relied exclusively upon the reports of Dr. Demeter to support a finding that the industrial injury medically permits light work. Relator does not challenge the commission's threshold medical determination nor the reports of Dr. Demeter upon which the commission relied.
 {¶ 52} However, relator does challenge the commission's nonmedical analysis. Particularly, relator challenges the following two paragraphs of the commission's nonmedical analysis:
 {¶ 53} "The claimant has indicated that he cannot read, write, nor do math well. This, at first glance, would corrolate with his tenth grade education which, ordinarily limits reasoning, and arithmetic and language skills but not enough to allow a person to do many of the complex duties needed in semi-skilled positions. However, the claimant's past work history reflects an ability to perform work over and above what his limited education would allow.
 {¶ 54} "Based upon the allowed conditions of this claim and the physical abilities and restrictions found by Dr. Demeter coupled with the claimant's limited education and his age of 57, the Staff Hearing Officer finds that the claimant would be able to engage in light duty work which would allow him to secure a position such as a security guard or even light assembly work where he could sit most of the time."
 {¶ 55} Ohio Adm. Code 4121-3-34 sets forth the commission's rules applicable to the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(B) sets forth applicable definitions. Ohio Adm. Code 4121-3-34(B)(3) sets forth definitions of the vocational factors.
 {¶ 56} Ohio Adm. Code 4121-3-34(B)(3)(b) sets forth definitions relating to "Education" as a vocational factor.
 {¶ 57} Ohio Adm. Code 4121-3-34(B)(3)(b)(iii) provides the following definition:
 {¶ 58} "`Limited education' means seventh grade level through eleventh grade level. Limited education means ability in reasoning, arithmetic and language skills but not enough to allow a claimant with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. Generally, seventh grade through eleventh grade formal education is limited education."
 {¶ 59} Ohio Adm. Code 4121-3-34(B)(3)(c) is captioned "Work experience." Thereunder are found definitions for (i) "Unskilled work," (ii) "Semi-skilled work," (iii) "Skilled work," (iv) "Transferability of skills," and (v) "Previous work experience."
 {¶ 60} Ohio Adm. Code 4121-3-34(B)(3)(c) states in part:
 {¶ 61} "(iv) `Transferability of skills' are skills which can be used in other work activities. Transferability will depend upon the similarity of occupational work activities that have been performed by the claimant. Skills which an individual has obtained through working at past relevant work may qualify individuals for some other type of employment.
 {¶ 62} "(v) `Previous work experience' is to include the claimant's usual occupation, other past occupations, and the skills and abilities acquired through past employment which demonstrate the type of work the claimant may be able to perform. Evidence may show that a claimant has the training or past work experience which enables the claimant to engage in sustained remunerative employment in another occupation. The relevance and transferability of previous work skills are to be addressed by the adjudicator."
 {¶ 63} Because the commission is the expert on the nonmedical factors, it need not rely upon any vocational report of record in rendering its nonmedical analysis. State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, 271.
 {¶ 64} Here, the commission's order does not state reliance upon any vocational report of record. The commission essentially rendered its own nonmedical analysis. It was well within the commission's discretion to do so. Id. It is apparent from the commission's order that some information was taken from the Hartung report, particularly Hartung's findings that relator worked semi-skilled jobs while employed at York. The commission may accept some of the findings of a vocational report without adopting other findings of the report. State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139, 141. The Hartung report as a whole, however, was not accepted. Apparently, the Cook/Mangiarelli report submitted by relator was not accepted because the commission's order does not indicate acceptance of the report.
 {¶ 65} Here, relator seems to present two separate contentions to show an abuse of discretion: (1) that the commission order fails to address transferability of skills when allegedly the commission's rules require it to do so; and (2) that it was an abuse of discretion for the commission to conclude that relator's "past work history reflects an ability to perform work over and above what his limited education would allow." Both contentions lack merit.
 {¶ 66} Relator is correct in pointing out that the commission's order does not specifically address "transferability of skills" as that term is defined at Ohio Adm. Code 4121-3-34(B)(3)(c)(iv). However, Ohio Adm. Code 4121-3-34(B)(3)(c)(iv) does not mandate that the commission address transferability of skills in every nonmedical analysis it renders.
 {¶ 67} It is the next paragraph of the rule, Ohio Adm. Code 4121-3-34(B)(3)(c)(v) captioned "Previous work experience" that states in part: "The relevance and transferability of previous work skills are to be addressed by the adjudicator."
 {¶ 68} Here, the commission did address the relevance of relator's previous work skills. However, it did not specifically state that there was a lack of transferability of skills. Given that the commission did not address lack of transferability of skills, we can assume that the commission did not find that relator possesses transferable skills.
 {¶ 69} The lack of transferability of skills does not mandate a PTD award. Ewart, supra, at 142. Here, the commission found that relator is capable of sustained remunerative employment notwithstanding the lack of transferability of skills. The failure to mention the lack of transferability of skills does not in any way detract from the reasoning of the nonmedical analysis. See Ewart, supra.
 {¶ 70} As previously noted, relator contends that the commission abused its discretion in finding that relator's "past work history reflects an ability to perform work over and above what his limited education would allow." Relator asserts that this finding does "not make sense" and that there is "not a shred of evidence to support it." (Relator's brief at 15.) Relator is incorrect.
 {¶ 71} Relator's contention seems to fail to understand that the commission is drawing a correlation between the educational factor and the work history. The commission has reasoned that relator seems to have been able to work successfully at semi-skilled jobs that would ordinarily challenge a person with a limited education. Thus, the commission is making a statement or finding regarding relator's educational status and particularly regarding his self-evaluation as to his ability to read, write, and do basic math albeit not well. The commission's analysis of relator's work history caused it to view relator's basic educational abilities more favorably. There was no abuse of discretion in this regard.
 {¶ 72} In short, the commission's nonmedical analysis survives relator's challenge here in mandamus.
 {¶ 73} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.